# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                      Elisabeth A. Shumaker
Clerk                                                        Chief Deputy Clerk

November 14, 1996

**TO:**   All recipients of the captioned opinion

**RE:**   96-2026 U.S. v. 829 Calle de Madero
          November 12, 1996

Please be advised of the following correction to the captioned decision:

Due to technical difficulties, the name of the authoring judge was deleted from the hard copies of the opinion.  The electronic copies are correct.  The authoring judge is Judge Kelly.

Enclosed please find a revised copy of the caption page reflecting the correction.

Very truly yours,

Patrick Fisher, Clerk

Susan Tidwell
Deputy Clerk

encl.

UNITED STATES COURT OF APPEALS

**Filed 11/12/96**

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

829 CALLE DE MADERO,
CHAPARRAL, OTERO COUNTY, NEW
MEXICO, Real Estate Located at,

       Defendant.

---

VICTOR VILLALOBOS, VIRGINIA
VILLALOBOS,

       Claimants - Appellants.

No. 96-2026

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV 93-232 M)

---

Stephen Stevers, Las Cruces, New Mexico, for Claimants - Appellants Victor Villalobos
and Virginia Villalobos.

David N. Williams, Assistant United States Attorney (John J. Kelly, United States
Attorney, and Stephen R. Kotz, Assistant United States Attorney, with him on the brief),
Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before ANDERSON, KELLY and LUCERO, Circuit Judges.

KELLY, Circuit Judge.

Claimants Victor Villalobos and Virginia Villalobos appeal the district court's order of forfeiture of residential real estate located at 829 Calle de Madero, Chaparral, New Mexico. They argue that this forfeiture violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. We conclude that this forfeiture is not excessive and therefore affirm the district court's grant of summary judgment in favor of the United States.

## Background

On June 23, 1996, Victor and Virginia Villalobos met two undercover officers for the El Paso County Sheriff's Office at a restaurant in El Paso, Texas, and negotiated the purchase of three kilograms of cocaine for $45,000. Mr. and Mrs. Villalobos requested that the exchange take place at their residence because they had $39,000 there. They were to provide the remaining $6,000 in five days. Later that day, the undercover officers arrived at the residence and went inside. Mr. Villalobos brought a brown paper bag containing approximately $39,000 in cash to the officers. The officers gave a pre-arranged signal, and the Villaloboses were arrested. They consented to a search of the property, which revealed the afore referenced cash in the brown paper bag, $5,000 in cash concealed behind the dresser drawers in the master bedroom, $16,900 in cash hidden between the paneling and insulation of a jacuzzi in the master bedroom, a programmable

scanner operating in the kitchen, and a list of frequencies with two Drug Enforcement

Agency frequencies marked.

Both Mr. and Mrs. Villalobos were convicted in the Twelfth Judicial District Court

for the State of New Mexico on drug-related charges. Mr. Villalobos was sentenced to

six years imprisonment for attempt to traffic in cocaine and for conspiracy to traffic in

cocaine. Mrs. Villalobos received five years of probation for conspiracy to traffic in

cocaine. In addition, approximately $56,000 and the scanner were forfeited to the State.

The United States initiated a civil forfeiture action under 21 U.S.C. § 881 (a)(6)

and (a)(7), seeking forfeiture of the residence. The residence was the Villalobos family

home, where Mr. and Mrs. Villalobos lived with their four children. The district court

granted the Claimants' motion to strike the § 881(a)(6) claim, finding insufficient

evidence that the Claimants' property was the proceeds of illegal activity. Summary

judgment was granted in favor of the United States under § 881(a)(7). Claimants appeal

the district court's grant of summary judgment.


<u>Discussion</u>

The Claimants argue that forfeiture of their home violates the Excessive Fines

Clause of the Eighth Amendment to the United States Constitution. We review questions

of constitutional law and dispositions on summary judgment de novo. <u>Wilson v. Meeks</u>,

1996 WL 605215, at *5 (10th Cir. Oct. 23, 1996); <u>United States v. Angulo-Lopez</u>, 7 F.3d

1506, 1508 (10th Cir. 1993), cert. denied, 114 S. Ct. 1563 (1994).

The Excessive Fines Clause of the Eighth Amendment received scant attention until 1989, when the Supreme Court held that the Clause did not limit the amount of punitive damages which may be awarded in a civil suit to which the government is not a party.  Browning-Ferris Indus. v. Kelco Disposal, 492 U.S. 257, 264 (1989).  Browning-Ferris was soon followed by the Supreme Court's most prominent decision on the Clause to date.  In Austin v. United States, 509 U.S. 602, 611-18 (1993), the Court examined the history of forfeitures in England and in the early days of this country and determined that forfeitures constitute payment to a sovereign as punishment for an offense.  In addition, the Court noted Congress's intent to punish drug traffickers by enacting the civil forfeiture statute.  Id. at 619-22.  The Court also relied upon the civil forfeiture statute's inclusion of an innocent owner defense—a defense not raised in this appeal and, on these facts, certainly not applicable—in support of its conclusion that such forfeitures constitute punishment.  Id. at 619.  The Court consequently held that the Excessive Fines Clause applies to civil forfeitures under 21 U.S.C. §§ 881(a)(4) and (a)(7).  Id. at 622.

We believe that Austin retreats from, at least for excessive fines consideration, the legal fiction that it is solely the guilt of the property—as opposed to the conduct of the owner or claimant—that is being punished.  As Justice Blackmun noted, "If forfeiture had been understood not to punish the owner, there would have been no reason to reserve the case of a truly innocent owner.  Indeed, it is only on the assumption that forfeiture serves

- 4 -

in part to punish that the Court's past reservation of that question makes sense." Id. at 617. The Court was equally clear that, from earliest times, the word "fine" was understood to include "forfeiture." Id. at 614 n.7.

With this background—that "fine" encompasses "forfeiture" and that the purpose of a forfeiture is to punish the claimant—our focus, once the government has established that the property was "used, or intended to be used . . . to commit, or to facilitate the commission of, a violation of [Chapter 13, Subchapter I, of Title 21 of the United States Code]," 21 U.S.C. § 881(a)(7), shifts to the traditional tests employed to determine whether a violation of the Eighth Amendment Excessive Fines Clause has occurred.

Despite its holding that civil forfeitures impose punishment for purposes of the Excessive Fines Clause, the Austin majority refrained from establishing a methodology for determining when a forfeiture is excessive, leaving that task to the lower courts. 509 U.S. at 622-23. The majority's only guidance came in apparent rejection of the test proposed by Justice Scalia in his Austin concurrence. Justice Scalia's reasoning, at odds with the majority's rejection of the "guilty-property" fiction, counseled that the excessiveness inquiry in civil forfeitures differs from the inquiry in cases involving monetary fines, which compares the value of the fine in relation to the offense. Id. at 627 (Scalia, J., concurring). Instead, Justice Scalia concluded that "[t]he relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence

forfeitable?" Id. at 628 (Scalia, J., concurring).

The majority in Austin, while rejecting Justice Scalia's approach, did acknowledge that the relationship between the property and the offense may be a relevant factor in the excessiveness inquiry, but stated that the lower courts were "in no way limit[ed] . . . from considering other factors . . . ." Id. at 623 n.15. Indeed, all of the circuits which have addressed this question since Austin have concluded that factors other than the relationship between the property and the offense are relevant. E.g., United States v. Chandler, 36 F.3d 358, 365 (4th Cir. 1994) (adopting a three-part instrumentality test which "considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder"), cert. denied, 115 S. Ct. 1792 (1995).

The majority of the circuits which have addressed the question perform an analysis that purports to balance the severity of the fine, i.e., the forfeiture, with the seriousness of the underlying offense and the culpability of the owner. United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, El Dorado, Cal., 59 F.3d 974, 985-86 (9th Cir. 1995); United States v. Milbrand, 58 F.3d 841, 847-48 (2d Cir. 1995), cert. denied, 116 S. Ct. 1284 (1996); see also United States v. Bieri, 68 F.3d 232, 236 (8th Cir. 1995), cert. denied, 116 S. Ct. 1876 (1996); United States v. Premises Known as Rural Route No. 1 Box 224, 14 F.3d 864, 876 (3d Cir. 1994) (leaving the question open,

but suggesting that both the nexus between the property and the offense and the relationship between the value of the forfeited property and the severity of the offense are relevant). Although there are differences between the tests articulated by the circuits which have adopted this approach, the tests roughly follow the same analytical process. First, the instrumentality or nexus test examines the connection between the forfeited property and the offense. This first prong of the test is required both by the statute as well as under Justice Scalia's approach, and the burden is on the government to prove that the connection exists. Second, the proportionality test compares the severity of the offense, the harshness of the sanction, and the culpability of the claimant. The burden of showing excessiveness is on the claimant.

The district court in this case applied the instrumentality test adopted by the Fourth Circuit in Chandler and concluded that the forfeiture was not excessive. In this appeal, the Claimants argue that the district court erred both in applying the instrumentality test and by failing to consider proportionality. They urge us to adopt a test which considers the nexus between the forfeited property and the offense and also compares the harshness of the sanction to the severity of the offense. The United States commends the instrumentality test adopted by the district court and the Fourth Circuit.

The Excessive Fines Clause of the Eighth Amendment mandates that a proportionality analysis be conducted in forfeiture proceedings, considering the severity of the offense, the harshness of the sanction imposed, and the culpability of the claimant.

A test which relies solely on the nexus between the forfeited property and the offense does not consider other factors which are relevant when considering whether a forfeiture is excessive. The Eleventh Circuit has persuasively explained why the Excessive Fines Clause requires an assessment of proportionality. United States v. One Parcel Property Located at 427 & 429 Hall Street, 74 F.3d 1165, 1170-72 (11th Cir. 1996). Relying primarily upon the Supreme Court's conclusion in Austin that civil forfeiture is punishment, and Congress's intent to punish individuals involved in drug trafficking, the Eleventh Circuit concluded that when the Excessive Fines Clause, "which constrains the power of the sovereign to punish, comes in to play, it necessarily protects the *person punished*, i.e., the owner." Id. at 1171 (footnote omitted); accord Real Property Located in El Dorado, 59 F.3d at 983 ("[T]he instrumentality test rests on a sharp distinction between *in personam* (criminal) and *in rem* (civil) forfeitures, the importance of which was reduced by the Court's decision in Austin . . . [which] made punishment the focus of attention.") (citation omitted). The Eleventh Circuit also relied upon the history and plain meaning of the Excessive Fines Clause in concluding that the appropriate inquiry under that Clause is a test of proportionality. One Parcel Property, 74 F.3d at 1170.

We agree that proportionality is relevant in evaluating excessiveness, however, the connection between the property and the offense remains relevant. The first step in the inquiry is the instrumentality test, in which the government must show the existence of a connection between the forfeited property and the offense. The connection between the

property and the offense must be more than a fortuitous or incidental one. If the instrumentality test is satisfied, the forfeiture will not be considered excessive unless the defendant—usually the claimant—then shows that the forfeiture is grossly disproportionate in light of the totality of the circumstances. That is, "[t]he language of the [E]ighth [A]mendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime." United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993).

In evaluating proportionality, courts must compare the severity of the offense with which the property was involved, the harshness of the sanction imposed, and the culpability of the claimant. Relevant factors in assessing the harshness of the sanction include the value of the property forfeited, its function, and any other sanctions imposed upon the claimants by the sovereign seeking forfeiture. Against these factors, the severity of the offense must be evaluated, taking into account the extent of both the claimant's and the property's role in the offense, the nature and scope of the illegal operation at issue, the personal benefit reaped by the claimant, the value of any contraband involved in the offense, and the maximum sanction Congress has authorized for the offense. These factors are not necessarily exclusive; we agree with the Sixth Circuit that these cases are "factually intensive," and we decline to prescribe a one-size-fits-all test or a weighting for the factors. United States v. Certain Real Property Located at 11869 Westshore Drive, 70 F.3d 923, 930 (6th Cir. 1995), cert. denied, 117 S. Ct. 57 (1996).

Using this methodology, we conclude that the forfeiture of the Claimants' home does not violate the Excessive Fines Clause. The instrumentality test is more than satisfied on the undisputed facts before the district court. After agreeing upon a price for the cocaine, the Claimants requested that the exchange of drugs and money occur at their residence. They then used the residence for this purpose.

Based on the undisputed facts before the district court, the forfeiture of the Claimants' residence is not disproportionate in the constitutional sense under any of the criteria we have considered. According to an affidavit submitted by Virginia Villalobos, the home had a fair market value of $80,000 to $100,000; the Claimants' brief asserts that the home has been valued at $133,000. The Claimants contend that the home has value far in excess of its monetary value because it is the place where they have lived and raised their family. They also contend that the loss of the home will cause serious financial hardship. In evaluating the harshness of the sanction, we recognize that this forfeiture will displace the Claimants' three minor children from their family home, but we must also consider the Claimants' deliberate and knowing use of the home in the criminal activity which gave rise to the forfeiture. See Bieri, 68 F.3d at 237.

Against these sanctions levied upon the Claimants, we consider the serious nature of the offense with which the forfeited property was involved. Both the Claimants and their residence were involved in activities which violate the Controlled Substances Act. The Claimants requested that the exchange of drugs and money occur at their home,

where they secreted large sums of cash and operated a scanner monitoring Drug Enforcement Agency activities. The presence of the scanner and the storage of cash—typical tools of the drug trade, see United States v. Hardwell, 80 F.3d 1471, 1490 (10th Cir.), rev'd on other grounds on rehearing in part, 88 F.3d 897 (10th Cir. 1996)—suggests continuous use of the property in criminal activities, not just an isolated incident.

The Claimants' home was connected to an illegal purchase of three kilograms of cocaine, which violates the Controlled Substances Act. See 21 U.S.C. §§ 841(a)(1), 846. Congress has authorized stiff penalties for such violations; first-time offenders may be imprisoned for up to forty years and fined up to $2,000,000. Id. § 841(b)(1)(B).

The severity of these possible sanctions—as well as the $45,000 price placed on the contraband involved and the ongoing nature of the illegal activity suggested by the presence of the concealed cash and the scanner on the property—leave no doubt that the Claimants and their residence were connected to a very serious offense. When viewed against the seriousness of this offense, forfeiture of the Claimants' residence is not disproportionate and does not violate the Excessive Fines Clause.

The Claimants suggest that we take into account that Claimant Victor Villalobos was sentenced on state charges to six years imprisonment and that Claimant Virginia Villalobos, on state charges, received five years probation. Claimants also forfeited approximately $56,000 and the scanner to the State. In evaluating excessiveness,

however, we do not mix state-imposed sanctions with federal sanctions.  The Constitution does not bar the federal government from proscribing activities or conduct which a state has also prohibited.  <u>Abbate v. United States</u>, 359 U.S. 187, 194 (1959); <u>Bartkus v. Illinois</u>, 359 U.S. 121, 132-33 (1959).

AFFIRMED.