PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 11/12/96**

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

ONE PARCEL PROPERTY LOCATED
AT LOT 85, COUNTY RIDGE, A
SUBDIVISION IN THE CITY OF
LENEXA, JOHNSON COUNTY,
KANSAS, also known as 8940 HALL,
LENEXA, KANSAS, WITH ALL
APPURTENANCES AND
IMPROVEMENTS THEREON,

       Defendant - Appellant.

No. 95-3405

---

STEVEN M. MUCHNICK,

       Claimant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 92-CV-1601)

---

Laura L. McConwell, Law Offices of Edward A. McConwell, Overland Park, Kansas, for
Defendant - Appellant.

Michael G. Christensen, Assistant United States Attorney (Jackie N. Williams, United
States Attorney, Annette B. Gurney and Connie R. DeArmond, Assistant United States
Attorneys, with him on the brief), Wichita, Kansas, for Plaintiff - Appellee.

Before ANDERSON, KELLY, and LUCERO, Circuit Judges.

KELLY, Circuit Judge.

Appeal is taken from the district court's order of forfeiture of one parcel of property located in the City of Lenexa, Kansas. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## Background

Pursuant to a valid court order, law enforcement officials monitored Steven M. Muchnick's home at 8940 Hall in Lenexa, Kansas ("Lot 85") for approximately two weeks in November and December, 1989. During that period, 154 telephone conversations involving drugs or drug use occurred at Lot 85; 94 of these conversations involved actual drug transactions. Based on this information, Mr. Muchnick was arrested and charged by both federal and state officials with a number of drug-related offenses. Mr. Muchnick was convicted on fifteen separate counts by the federal district court for the Western District of Missouri, and subsequently pled guilty in the state district court of Johnson County, Kansas. During his plea proceeding, Mr. Muchnick admitted that he made telephone calls from Lot 85 to arrange drug transactions, and that he stored anabolic steroids there.

While the criminal charges were pending against Mr. Muchnick, on January 11,

1990, the City of Lenexa, Johnson County, Kansas, initiated a forfeiture proceeding in the state district court against Lot 85, Mr. Muchnick's car, and $237.00. Because of a Kansas Supreme Court decision holding that homesteads cannot be forfeited under state drug laws, however, federal authorities instituted forfeiture proceedings against Lot 85. The federal forfeiture action was initiated under 21 U.S.C. § 881(a)(7) on December 8, 1992. The City had agreed with federal authorities to obtain a dismissal of Lot 85 from the state-law forfeiture proceeding after the federal action was brought. The voluntary dismissal was obtained from the state district court on December 18, 1992. On December 22, 1992, Lot 85 was seized by federal marshals, acting pursuant to a federal warrant. The seizure occurred without notice or a hearing.

The Defendant moved in the state district court to have the voluntary dismissal of the state proceeding set aside *nunc pro tunc*. The Defendant argued that the order granting the motion for voluntary dismissal was infirm because it was not signed by a judge of the district in which the action was pending and did not comply with Kansas Rules of Civil Procedure for dismissal of an action. That motion was granted from the bench on January 21, 1993, and an order entered on March 4, 1993. Lot 85 was ultimately dismissed from the state forfeiture proceeding on March 30, 1993.

On January 25, 1993, the Defendant and Mr. Muchnick moved in the federal district court for dismissal of the federal forfeiture action against Lot 85, arguing that the federal district court did not have jurisdiction over Lot 85 because of the pendency of the

state action. The movants apparently reasoned that the *nunc pro tunc* order setting aside the voluntary dismissal revived the state court's jurisdiction despite the seizure of the property by federal authorities. The motion for dismissal was denied, and on July 26, 1995, the federal district court granted summary judgment in favor of the United States. A decree of forfeiture of Lot 85 was entered on December 1, 1995.

## Discussion

We review jurisdictional and constitutional claims de novo. Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 969 (10th Cir. 1996); United States v. Angulo-Lopez, 7 F.3d 1506, 1508 (10th Cir. 1993), cert. denied, 114 S. Ct. 1563 (1994).

The Defendant raises three issues in this appeal. First, it argues that the federal district court lacked jurisdiction over the property and therefore erred in denying its motion to dismiss. Second, the Defendant argues that the district court erred in failing to dismiss the action as the proper remedy for the violation of Mr. Muchnick's right to due process. Third, the Defendant argues that the seizure of the property amounted to an excessive fine in violation of the Eighth Amendment.

In its initial brief, the Defendant raised a fourth issue; namely, that the forfeiture of Lot 85 under 18 U.S.C. § 881(a)(7) violated the Double Jeopardy Clause of the Fifth Amendment to the Constitution. Since the briefs were filed in this appeal, the Supreme Court has resolved this issue. In United States v. Ursery, 116 S. Ct. 2135 (1996), the

Court held that civil forfeitures under § 881(a)(7) were not punishment for purposes of the Double Jeopardy Clause.  Id. at 2149.

## I.  Jurisdiction

The Defendant argues that the federal district court was without jurisdiction over the property because of the pendency of the forfeiture proceeding in the state district court.  The foundation for Defendant's argument is a rule which applies when two courts seek to assert in rem jurisdiction over the same property in essentially the same type of action.  Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195 (1935).  In such a case, the court first asserting jurisdiction over the property has the power to decide the case without interference from other courts, even though those courts may have had jurisdiction over the property had they exercised that jurisdiction first.  Id.  This first-in-time rule applies to in rem proceedings in both federal and state courts.  It stands as the lone exception to the general rule that the pendency of a prior suit does not bar another suit for the same cause of action in a different court having concurrent jurisdiction.  Donovan v. City of Dallas, 377 U.S. 408, 412 (1964); Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 465-66 (1939).

Although the rule relied on by the Defendant has an admirable pedigree, it is not applicable to the facts before us.  The cases in which the rule was established, and those to which it applies, involve separate tribunals vying for jurisdiction over the same

property.  <u>Princess Lida</u>, 305 U.S. at 456; <u>Penn Gen. Casualty</u>, 294 U.S. at 194; <u>Cassity v. Pitts</u>, 995 F.2d 1009 (10th Cir. 1993); <u>United States v. $79,123.49 in United States Cash & Currency</u>, 830 F.2d 94 (7th Cir. 1987).  For instance, in <u>$79,123.49</u>, the State of Wisconsin commenced a forfeiture action regarding property seized during a drug arrest. The case was dismissed for noncompliance with statutory time limits, but the court placed a stay on its order turning the property over to claimant's counsel.  Before the stay expired, however, the United States Marshal seized the property from the county courthouse.  830 F.2d at 95-96.  The Seventh Circuit held that the first-in-time rule applied and deprived the federal court of jurisdiction over the property, noting that the case presented "all of the logistical problems and potential for federal-state conflict inherent in two courts simultaneously competing for control of one res."  <u>Id</u>. at 97.

This case does not present a situation in which two tribunals simultaneously compete for jurisdiction over the same property.  On October 30, 1992, the Kansas Supreme Court ruled that the Kansas Constitution protected homesteads from forfeiture under state law.  <u>State</u> <em>ex rel.</em> <u>Braun v. A Tract of Land in the Northwest Quarter of Section 4, Township 11 South, Range 19 West of the 6th P.M., Ellis County, Kansas</u>, 840 P.2d 453 (Kan. 1992).  Consequently, state officials contacted federal authorities and requested that a forfeiture action be commenced under federal law.  The federal district court was informed of the pendency of the state proceeding, and of the City's agreement to dismiss that action at the same time the United States Marshal seized the property.  On

December 18, 1992, the City of Lenexa's motion to voluntarily dismiss the forfeiture action against Lot 85 was granted by the state district court. Lot 85 was seized by federal authorities on December 22, 1992. By granting the motion to dismiss, the state district court affirmatively relinquished its jurisdiction over Lot 85—and its power to prevent the federal district court from asserting jurisdiction over the property. The seizure by federal authorities on December 22, 1992, brought Lot 85 within the jurisdiction of the federal district court.

The forfeiture claim was filed in federal district court on December 8, 1992. On December 10, 1992, the federal district court issued an order directing that a warrant of seizure of the property be issued. Although on these dates the state district court had exclusive jurisdiction to control the disposition of the property, neither of these actions in the federal district court interfered with the state district court's jurisdiction over the property or with that court's judicial processes. Penn Gen. Casualty, 294 U.S. at 198 ("While it is often said that of two courts having concurrent jurisdiction *in rem*, that one first taking possession acquires exclusive jurisdiction, it is exclusive only so far as its exercise is necessary for the appropriate control and disposition of the property. The jurisdiction does not extend beyond the purpose for which it is allowed, to enable the court to exercise it appropriately and to avoid unseemly conflicts. The other court does not thereby lose its power to make orders which do not conflict with the authority of the court having jurisdiction over the control and disposition of the property.") (citations

omitted); see also United States v. Klein, 303 U.S. 276, 282 (1938); First Charter Land Corp. v. Fitzgerald, 643 F.2d 1011, 1015 (4th Cir. 1981).

The Defendant further argues that the state district court did not at any time lose its jurisdiction over Lot 85. It contends that because the order dismissing Lot 85 from the suit was set aside *nunc pro tunc* from the bench on January 21, 1993, and entered in an order dated March 4, 1993, the state district court maintained exclusive jurisdiction over the property throughout. The Defendant offers no authority for its argument, and we have found none. Federal authorities seized Lot 85 on December 22, 1992, nearly one month before the order to set aside the dismissal was granted from the bench by the state district court. Giving that *nunc pro tunc* order retroactive effect, as the Defendant urges, would create the potential for the "unseemly and disastrous conflicts in the administration of our dual judicial system" which the first-in-time rule relied upon by Defendant seeks to avoid. Penn Gen. Casualty, 294 U.S. at 195.


II. Remedy for Due Process Violation

The district court found that Mr. Muchnick's right to due process was violated when Lot 85 was seized before receiving notice or a hearing. On appeal, the Defendant argues that the proper remedy for this violation is the dismissal of the forfeiture action.

The Tenth Circuit has already held that a due process violation such as this one does not invalidate the forfeiture as long as evidence obtained in the illegal seizure is not

used against the claimant in the forfeiture proceedings. United States v. 51 Pieces of Real Property, Roswell, N.M., 17 F.3d 1306, 1315-16 (10th Cir. 1994). In addition, the government must return to the claimant any rents that accrued during the period of the illegal seizure. Id. at 1316. No evidence obtained during the illegal seizure was used against the Defendant in the forfeiture proceedings, and no rents accrued during the period of the illegal seizure. Indeed, Mr. Muchnick entered into an agreement with the federal marshal which permitted him to occupy the property during the pendency of the forfeiture proceeding. Under the law of this circuit, dismissal of the action is not required.

## III. Excessive Fines

The Defendant argues that this civil forfeiture violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. In United States v. 820 Calle de Madero, Chaparral, Otero County, New Mexico, No. 96-2026 (10th Cir. 1996), we addressed the question left open by the Supreme Court in Austin v. United States, 509 U.S. 602, 623 n.15 (1993); namely, the methodology for determining whether a civil forfeiture is excessive and consequently violates the Constitution. In Calle de Madero, we recognized that, in a forfeiture proceeding, the government bears the initial burden of proving the requisite connection between the forfeited property and the offense. If this instrumentality test is satisfied, the forfeiture will not be considered excessive unless the

claimant or defendant then shows that the forfeiture is grossly disproportionate in light of the totality of the circumstances surrounding the forfeiture. In evaluating proportionality, courts must consider the severity of the offense with which the property was involved, the harshness of the sanction imposed, and the culpability of the claimant.

Using this methodology, we conclude that the forfeiture of Lot 85 does not violate the Excessive Fines Clause. The instrumentality test is more than satisfied by Mr. Muchnick's admissions regarding the illegal activities he engaged in at Lot 85. His use of his home in these activities was knowing and deliberate.

Additionally, the Defendant has not established that the sanctions imposed are grossly disproportionate to the offense involved. In evaluating the harshness of the sanction, we consider the property's estimated fair market value of $158,000. Mr. Muchnick was tried for fifteen separate violations of federal drug laws; he was found guilty on all counts and sentenced to two years probation. He was also fined $1,200 and required to undergo three months of treatment.

Against these sanctions, we consider the serious nature of the offense with which Mr. Muchnick and the forfeited property were involved. Lot 85 was connected to numerous acts which violate the Controlled Substances Act. E.g., 21 U.S.C. § 841(a)(1) (distribution of controlled substances); id. § 843(b) (use of a communications device to facilitate acts which violate Chapter 13, Subchapter I, of Title 21 of the United States Code); id. § 846 (conspiracy to violate Chapter 13). Congress has authorized stiff

penalties for such violations; violators may be imprisoned for up to forty years and fined up to $2,000,000.  Id. § 841(b)(1)(B).  We are persuaded that, in view of the seriousness of these offenses, forfeiture of Lot 85 is not disproportionate and does not violate the Excessive Fines Clause.

AFFIRMED.